We've got one final case on the calendar this afternoon, Sisley v. USDEA. And we've got three people arguing. Please raise your hand if you can hear me. All set, all right. And it is petitioners go first. And we've got Mr. Zorn and I guess it's Mr. Pennington. And 15 minutes and five. So it's all yours. Thank you, Your Honor. May it please the court, Matthew Zorn for petitioners. I'm actually going to divide my time, give four minutes to Mr. Pennington, and I'm going to take 12 and reserve four for rebuttal. Hang on a second. Say that one more time so we can get the clerk with the proper timing on the. So how much do you want? Sure, 16 for myself and I'm going to reserve four for rebuttal and then four for Mr. Pennington. I'm going to divide on the opening. OK, got it. Thank you, Your Honor. May it please the court, Matthew Zorn for petitioners. Three points I want to cover. The first is, what is it that we want this court to do? The second question is whether this case is even properly before the court. And then the third question I'd like to address is non-delegation. Let me actually start with what we're not here to ask the court to do. We are not asking this court to formulate national drug policy on the basis of a one-page handwritten petition. And we're not asking this court to substitute its judgment for that of DEA. In fact, that's precisely our problem, is there is a statutory interpretation issue that prevents DEA from ever really rendering judgment. The problem here, as the court can see at ER-2, is when they receive these petitions, they apply a five-factor test and the petition ends up in the dustbin. So what we are asking this court to do is flex a little Article III muscle, set aside the five-part test, and then this process will work as Congress intended. As it says in 811A, it says, hearing on the record, which is the magic words for formal rulemaking, formal public rulemaking. And I would point the court to 1261 of the record, which is the governor's petition, which was filed a decade ago, where they explain why a public rulemaking is needed. A public rulemaking process would allow all interested parties to contribute their comments and expertise and provide a full record for decision. So I guess we would rather file a 1,600-page record in front of the agency, but there's a gatekeeping function, and that's why we've asked this court to step in. And this is not a- This is a really odd case. I mean, you've got a very precursory petition that was denied. Your clients filed no petition. You appeal the denial of somebody else's petition. I've never seen a case like this. Well, actually, that was the posture of Massachusetts versus EPA. The petition in that case was not filed by Massachusetts. It was actually filed by a lawyer named Joe Mendelson, who worked for a small nonprofit. And what ended up happening was Massachusetts caught wind of the petition and then filed a petition for review at the DC Circuit, and then that case was consolidated with a separate petition for review action that Mr. Mendelson and his nonprofit and some other organizations filed.  I've never thought anything about it that Massachusetts was filing a petition for review on another party's petition. And I think that it follows from basic principles. It follows from Clark at 399, where the Supreme Court is describing the zone of interest test and specifically identifies that in cases where the plaintiff is not itself the subject of the contested regulatory action. So the zone of interest test itself contemplates a situation where perhaps there's an agency action rendered in someone else's decision. But if you fall within the zone of interest, which is defined by the specific statutory provisions that are being challenged, which in this case is 811A and 812. Again, 811A is formal rulemaking. The purpose of formal rulemaking is to allow the industry to participate and bring their views to the table. And we weren't able to do that. I think that at least Dr. Sisley and SRI are clearly within the zone of interest. Can I ask, your theory, though, is that on the basis of the denial of this one-page handwritten petition to the DEA, I mean, your standing theory, I think, is that there are probably millions, tens of millions of aggrieved persons out there who could have filed their own petitions for review in circuit courts all across the country on the basis from this one denial from the DEA? It sounds to me like that's where you have to end up. And that does seem odd, right? I wouldn't agree with that. What I would say is two things. The first is I think that the traditional gatekeeping Article III injury in fact requirement, whether it's procedural or substantive, would still apply. So I think we would have to discount a lot of those million because they wouldn't be able to articulate an injury in fact. My client... How many veterans are out there who could potentially benefit? I mean, I would assume that's a very large number in and of itself, no? Right. And the DC Circuit found that a veteran on the basis of the VA policy had Article III standing. But where I would direct the court is actually back to Clark at 399 at the top of the page, where the Supreme Court describes the block opinion and distinguishes between milk handlers and milk consumers. And this is, again, within the context of the zone of interest. So my answer to that question would be those veterans probably wouldn't fall within the zone of interest because they would be marijuana consumers and not marijuana handlers like Dr. Sisley and SRI. And so they wouldn't have a cause of action. In our brief, we say prudential standing. But after Lexmark, I think it's more properly characterized as whether or not we are stating a cause of action or have a cause of action. So... I have to say, if I can interrupt for just a moment, I have to say my problem is neither Article III standing nor indeed a zone of interest standing. It rather is an exhaustion sort of question. I mean, these people have had nothing to do with the initial petition that was filed. The initial petition that was filed was a one-page rather odd petition. Somehow, it doesn't strike me as reasonable to allow somebody to come in this way without themselves having filed a petition to piggyback on the denial of such an odd and abbreviated petition. It just doesn't fit with the way the administrative process is supposed to work. Well, I would say that the parties do not dispute that this was a final agency action dismissing the Ziskowitz petition for good. And in fact, in ER 2, the DEA says, we continue to believe, based on our interpretation of the facts and the statute, that marijuana meets the criteria for control under the CSA. So this is the agency making a determination. It's a final determination. I read what they said. I get it. I know that. Yeah. So then, from there, I would just say, point to 704 of the APA and Darby. And what Darby says is, if agency action is made reviewable by statute, and here, 877, if we are persons aggrieved, this is reviewable by statute. If we are within the zone of interest of the specific statutes that the agency has applied in this action, there is no exhaustion. And exhaustion, in this case, is non-statutory. The second response, Judge Fletcher, is exhaustion is a claim processing rule. It's not like standing. It doesn't run with the litigant. And so the purpose of exhaustion is to give an agency a pass at the claim. And once it renders its expertise on the claim, as it did in this case, the action is right for review. So it seems like an odd posture. But under the text of 704 and under Darby, this is made, the exhaustion cannot apply as a matter of prudential. And it's not statutory exhaustion in this case. Do you have any case, except for the Massachusetts case, where the problem seems to have passed unnoticed, where a court has actually dealt with this and sort of said, this is all right to allow someone to bring a petition for review when someone else has been denied, and that person or those people have declined to seek review? Your Honor, if we could rise just one level of abstraction. I mean, we cite cases where there is a statute that is interpreted in an adjudication involving someone else or an agency action involving someone else. So Patrick is an example. Mr. Patrick, David Patrick, he wasn't originally part of the agency action. But he challenged the interpretation that was of the, I think it was the Indian Gaming Act in that case. Clark is another example. Security specific was the one that applied to the comptroller. The comptroller construed Section 36 of the McFadden Act. And then the trade association was the one that came in and challenged the agency's construction of Section 36. So if we just rise just one level of abstraction, we see this happen where other parties come in and challenge an agency's interpretation of a statute in a different adjudication or a different proceeding. And that's because that interpretation affects them. This is a separation of powers problem. When an agency is not applying a statute the way Congress instructed it to, the right people to come and challenge it are the people within the zone of interest of that statute. This is how Congress enforces its will. It's through advocates like me, representing Dr. Sisley, explaining how this statute isn't being applied properly. Could I ask you to shift to the merits just because your time is dwindling? Sure, yes. If I could just shift to non-delegation. This is an important claim. And the reason why I would direct the court to ER2, it sets the table for what would happen on a remand. It's a question of whether DEA is going to have to have a binary choice of Schedule 1 or Schedule 2, or beyond that, whether they have the whole spectrum of options. So bizarrely, we are the party here arguing that DEA should have more discretion on remand. We're actually arguing that the agency should have more options at its disposal. And I would like to mechanically, briefly explain how this works. We are a party to the Single Convention of Narcotic Drugs of 1961, which was a treaty that was ratified in 1967. And the way this works is it's an open-ended treaty. And I would refer the court to page 833 of the record, which is in the House report, and explains how this works. The international organ, which in this case is the World Health Organization, can put drugs on the single convention schedule. And when that happens, the United States automatically has to do the same thing. The Attorney General has no choice. And actually, if I could just give the court one supplemental citation, if it's interested. This was actually, this happened relatively recently. If you want to see this in action, it's 85 Federal Register 62215. And our point is that this violates the private non-delegation doctrine. Because there's no dispute. The government doesn't even dispute how this works. Which is an international organ is creating criminal law in this country because they're putting substances on their schedules, and then it automatically gets scheduled over here. The second non-delegation problem, which is also serious, is that there's no dispute that a quintessential legislative power is being delegated to the Attorney General. And how do we know that? Because in Medellin, the Supreme Court said that the power to implement treaties has to be done by Congress. But what's in this statute is that it's being done by the Attorney General. So the legislative power is clearly being delegated over. And then we have a double delegation problem. And we cite Judge Kavanaugh's opinion at the DC Circuit because for a simple proposition, which is neither side is really citing a case law that is directly on point here. And I would submit to this court that the novelty of 811 D1 should make this court constitutionally skeptical. Because I have not found any statute that is anything like this, where there's a private delegation stacked on top of a regular non-delegation issue. And the last point I would make on non-delegation is in Toobie, the Supreme Court held that the Controlled Substances Fact Finding functions saved the Controlled Substances Act. It was the intelligible principle. It's actually in the context of emergency scheduling. I would note that on its face, this statute disclaims the intelligible principle. It says, don't do any fact finding. And to me, that is a problem. And you wrap it all together, and we have a separation of powers problem. Thank you. OK. And I guess we will hear now from Mr. Pennington. Shane Pennington for petitioners. May it please the court. I'm going to be talking about the merits of the statutory interpretation issue. And DEA's five part test in the way that it came to be, in the way that it stayed in place, is a relic of a bygone era of reflexive Chevron deference. And it's a cautionary tale of what happens when courts use Chevron as an excuse not to apply the traditional tools of statutory construction. And a comparison of the party's briefs on the merits on this issue dramatically illustrates the point. You have our opening brief, which goes 20 pages into detailed statutory argument about how DEA's five part test cannot be squared with the plain, ordinary meaning of 21 USC 812B1B. And then you get the response brief from the government, which doesn't offer anything, not a dictionary definition, doesn't try to employ a single tool of statutory construction. In fact, invites this court to defer without looking at the statutory text based entirely on Chevron deference and policy arguments. And we submit that that approach is very, very problematic. And when you combine it with the procedural issues that the court was discussing earlier, the result is that you'll never have, no matter how good the petition is, you'll never get that formal rulemaking on the record. Because DEA will just swap these things down out of hand without initiating proceedings. Can I ask you just to go back to your statutory point? So you're saying what, at Chevron step one, if we look at the language of 812B1B, that just forecloses? I don't know, like what part of the five part test? Any part of it? Every single part of it is defective? Or what's your, just walk me through, pointing to the statutory language, what in the statute you think precludes the DEA from doing what it's done? So two quick points, Your Honor. We make all of these, these are at pages 47 to 67 of our opening brief. But the two points that I would make is if you look at 812B1, which are the three factors that they need to find to keep a drug in schedule one. If you look at B1B, it's currently accepted medical use. And then if you look at B1C, it is there's a lack of safety for use. And so safety is specifically discussed as a separate finding that the Attorney General needs to make in order for a drug to be in schedule one. Yet if you look at the five part test, it talks about safety repeatedly, safety and effectiveness, which the result is, is that if B1B includes safety, then it renders B1C surplusage, which is just a red flag that what they, that their interpretation is contrary to the plain meaning of the text. And to be clear, DEA recognized this in the 1992 rule. And that's at page 10504 of the 1992 rule, where the acting administrator in announcing it said, look, we recognize that medical use and safety are supposed to be separate in the text of the statute, but that is contrary to scientific reality. Well, we beg to differ. And we would say that the plain meaning of the text ought to be applied. The second point that I'd like to make briefly is in the 2020 denial of the Ziskowitz petition, DEA looked at, attached a 2016 denial that was based on basically the DEA received a petition in 2011 and denied that petition in 2016. So it's looking at evidence from five years earlier. And it denies a 2020 petition on that basis alone employing the five part test. And this shows importantly that whatever DEA is looking at, it is not currently accepted medical use in treatment in the United States. At most, it's 2016 or 2011 evidence. And that cannot be squared with the text. We make several other arguments for why the five part test is contrary to the plain meaning of the statute. But I see that I'm out of time. So I'll save the rest of the time for rebuttal unless the court has further questions for me. OK, thank you very much. Let's hear from Mr. Aguilar for the government. May it please the court. Excuse me, Daniel Aguilar for the federal respondents. I think as this court's questions have noted, this case is in an exceedingly unusual posture for which there isn't case support outside of petitioners invocation of Massachusetts versus EPA, which I'll explain as distinguishable. But yes, Judge Collins. That was going to be my question. Tell me why. I mean, they say exactly what they're doing here is what happened in Mass versus EPA, which led to one of the most significant petitions for review in terms of its practical impact. So why isn't that, why do you say that that's not controlled? Sure, it's because of the discussion of standing in Massachusetts versus EPA. The majority makes this point. It says we only need to find one party withstanding. And we determined that it is Massachusetts because unlike an individual litigant, and it draws that distinction very clearly in the opinion, Massachusetts deserves special solicitude as a separate sovereign. And I think it's in footnotes 17 of the opinion, the majority opinion is responding to dissent. And it says Massachusetts has truly unique interests in this case as sort of parents' petri eye action. It uses those terms. And then both the majority opinion and the dissent note that we don't think that there would probably be standing here if this was just an individual litigant who hadn't participated in this rulemaking. And then tried to say, I think that the denial of EPA's rulemaking and its potential effects on climate change somehow harms me. And I want review of a denied rulemaking that I didn't participate in administratively. But did they address the issue of whether or not someone who did not participate in the administrative proceedings is within the scope of the petition for review procedure? So I think it's less about whether it's within the zone of interests or any sort of prudential considerations. I mean, you can look to Lujan for this point. In Lujan, the statute said any person can file suit if the Endangered Species Act has not been complied with. And the court thereon went to go say, that's true. It's a pretty expansive statute. But nevertheless, we don't think that they're standing in this case because it's a generalized grievance. It's not a particularized concrete injury. And the way that the Controlled Substances Act is set up here is under 811, it says, OK, a citizen can petition the administrator or the attorney general to reschedule a drug. There can either be formal rulemaking or can there be a denial. We don't need formal rulemaking at this time. And then if you're aggrieved by that decision, then under 877, you can seek judicial review. But I think as Judge Fletcher's point, and I think as opposing counsel Matthew Zorn stated, there's not a case to support the proposition that when an agency denies rulemaking, that then anyone who did not participate in that rulemaking can seek judicial review. I don't know of any precedent for that point. Well, how do you... Now, they rely on... Except Massachusetts. Because of the special solicitude of Massachusetts as being a separate sovereign, and I don't know of any other way to read that case as saying that if Massachusetts were an individual litigant, that Massachusetts would have standing. I thought the court was pretty clear in drawing a demarcation between those two propositions. What about just the point that your opponents raised about the language of 877, which is that the statute very deliberately uses the term person aggrieved rather than party aggrieved. And we have, thinking of the Pacific Maritime Association case, it's obviously a different statute there. But there too, we seem to put a lot of weight on the fact that, well, Congress could have said party if it really wanted to limit these review proceedings to parties who actually participated before the administrative agency, but it said person. And so what's your response to just that plain language reading of 877? I think that goes to exhaustion, Your Honor. In Pacific Maritime, that entity was repeatedly trying to participate in the administrative proceedings. It moved to intervene before the ALJ, moved again to intervene before the NLRB. It was trying to exhaust the administrative procedures before it. And when the agency acted repeatedly to deny those attempts, I don't think it can be fairly said that they didn't exhaust their administrative remedies that way before seeking judicial review. And that's usually why we require somebody, as this court did in Agua Caliente tribe of Peñuel Indians, you need to go to, in that case, it was you need to go to the Department of Interior if you want to be a federally recognized tribe. Now, even though the statute there is set up of, you can be a federally recognized tribe if Congress allows you to do it, if Interior allows you to do it or court declares you so. But the tribe didn't try any of those tacks. They filed a letter with the secretary and then they filed a complaint in district court. And what this court held was, no, there's a statutory and regulatory scheme set up for you to petition the government to redress your grievances. That's available. And when you don't try to seek that remedy, you can't come into court first. So I think- I'm trying to figure out still your differentiation between this case and the Massachusetts case. Are you saying that the petitioners here or the people in front of us now, they lack Article III standing and therefore? Is that the argument? Because I think they have Article III standing. I mean, the veterans actually would like to use this free from the constraints of having this be a Schedule I drug. To be clear, I know that there are complaints is that we would like marijuana not to be a Schedule I drug, but that's something that Congress did. The discrete agency action- No, no, wait a minute. For the moment, I'm talking about Article III standing. It seems to me that they have been adversely affected by the fact that this is Schedule I. And the point that I was making is the claim that they're raising here is that DEA's denial of somebody else's petition harms me. And I don't think that that's the kind of particularized or concrete injury, but Your Honor, under either rubric, however you want to think of this at the threshold, whether it's Article III standing or exhaustion or whatever, there is no precedent, there is no support for when an agency denies somebody's rulemaking and that somebody goes to court and tries to seek judicial review. And the court rules on that, that then other people never participated in the administrative proceeding, could come into different courts and raise new arguments for the first time to try to overturn the agency's decision. There's just no precedent for that proposition. But except you keep telling me that Massachusetts is not a precedent for that, and I still have trouble understanding why that's so. I mean, you say there's something special about Massachusetts being a sovereign, but I'm not sure why that tells, why that's the differentiating factor. Help me understand why the fact that it should be a sovereign makes the difference. So to be honest, I am sympathetic to the sense reading of that case, but I think what Justice Stevens was saying in his majority opinion was that states as separate sovereigns have unique interests in controlling what happens in their own geography and in their particular citizens. I understand that, but why does the state have a separate interest that allows them to appeal the denial of somebody else's petition? That I'm not sure of, Your Honor. That's what the Supreme Court has said. But what it also said in that opinion was Massachusetts is acting as a sovereign and not as an individual. And that difference decides the case. The sovereign stuff that Justice Kennedy writes in that opinion goes entirely to whether or not it has a cognizable injury. It really is not talking about whether or not Massachusetts should have the right to appeal the denial of somebody else's petition. That's really not within the scope of the discussion as I see it. Right, and so the petitioners who actually did petition DEA for rulemaking also sought judicial review. The states there were also interveners. So you had parties there who were trying to seek judicial review of the administrative proceedings and such. So again, Your Honor, if you don't wanna make a ruling on standing here, you don't need to. Under Steel Code, there are threshold defenses on both of this, either on standing or exhaustion. And so I think- You know, when Massachusetts came into that proceeding, was, did anyone raise the issue, well, you can't come in here because you didn't participate in the administrative process? Was that raised at all in Massachusetts EPA? I don't recall that being part of it. I didn't look at the district court briefs. I looked at the federal respondents' brief in the district court, and the standing arguments were slightly different. I don't know that that was raised. But to the extent that the petitioners here are relying on this case to sort of say that that's a generally applicable proposition across, just sort of across the federal government, that doesn't strike me as right. It seems like the fact that this case is an outlier, that we don't see cases where people come in from denials of rulemaking where they've never participated, just underscores the usual rule and the common sense understanding that when you ask the agency to initiate rulemaking and they deny your petition, that person can seek judicial review. And there's nothing impeding petitioners here from filing a petition with DEA, laying out their arguments so that DEA could consider that in the first instance. And I know that petitioners want to make out that it's all a foregone conclusion, but as we noted in our discussion of merits, the statutory phrase here is ambiguous. The agency has discretion to promulgate reasonable interpretations of what currently accepted medical use in the United States means. And if petitioners want to press policy arguments before the agency, they're certainly free to do so. And the agency is certainly free to consider those arguments for what they're worth. And so just in common sense, the correct disposition of this case would be to dismiss it at the threshold and then allow petitioners to go back to DEA and present their arguments there in the first course, just as what happened with Mr. Ziskiewicz when his claims for judicial review were denied because they were untimely or filed in the wrong court. He said, great, I'll correct this. I'll go back to DEA and then file a petition and DEA can consider it again. I'm happy to address any other questions that the court has. Otherwise, we'd ask you to deny or dismiss the petition as appropriate. Okay, the other side has saved some time. Thank you, Your Honor. I'd like to address Massachusetts versus EPA because I think that the government here is conflating Article III standing with whether there was a cause of action. We aren't asking this court to afford any of the petitioners the special solicitude of a state. That was an Article III issue about injury. We put in Declaration 1412, 1413 of the record, which establishes, I believe, Article III standing about injury, in fact, beyond any reasonable doubt. And beyond that, there's a procedural injury in fact here because of the failure to engage in formal rulemaking. And so the redressability and causation standards are even more relaxed. I think that's Lujan footnote seven. So what our argument is, is if the court applies just Lujan or the Friends of the Earth factors, no special solicitude, there's Article III standing. Then Massachusetts stands for the proposition that someone other than the party that submitted the rulemaking petition could state a cause of action. And this is- Can it stand for a proposition it didn't address? I mean, did it actually address this issue? No, I mean, it did not address this issue and none of the DC circuit. I would submit to you, Judge Collins, that this would have been an easier off ramp than where the decision ended up. But I would also say that this is not new. This is not a new principle of administrative law. I mean, think of what would have happened if the agency in this case had acted sua sponsae and just threw a rule out there. Are we saying that nobody would have had the ability to challenge something because the agency itself instigated the rule? Similarly, the government says, well, we didn't participate in the rulemaking, but it is a well-established principle of administrative law that even if you miss the notice and comment period, you might have the ability as a person aggrieved to come in and challenge a rule if you were aggrieved by the rule. And there are all sorts of reasons why you could miss the notice and comment period. On issue exhaustion, I'll stand on the brief because I think the government waived that argument, but I'll stand on the brief. And I do want to address maybe why we didn't file a petition here. We lay out the facts here. The fact of the matter is these petitions generally take a really long time. This is a pure legal issue. It is right for decision. There are no facts to be decided here. And we want this done now. The, my clients are suffering injuries from the failure to engage in rulemaking, from the failure to apply this statute according to the plain and ordinary meaning. Let me ask you this about time. The letter that was sent in by Mr., it's a hard name to pronounce, to which the response was given. He sent that letter in on January 3, 2020. The response from the government was on April 20th, 2020. That didn't take very long. That's true, but again, I would stand on Darby. Darby states very clearly, even if there are optional procedures, completely optional procedures, courts are not free to impose prudential exhaustion requirements, which is effectively the route we're going. They're saying, well, you should have filed another petition. That was the argument in Darby that was rejected. You should have pursued the agency process. Maybe we could have done that. And I submit we probably would have waited longer than four months if we had submitted a petition. But regardless, I think Darby forecloses this avenue. And in our briefs, we also discuss other reasons why this court should excuse exhaustion, even if it were to reach that. I'm out of time, so I just wrap up. Again, for the reasons we've stated, we are not asking this court to supersede the judgment of DEA. We're asking this court to vacate this decision and send it back to DEA so that the rulemaking process can function as Congress intended with formal rulemaking on the record. Thank you. Thank you very much. Thank everyone for their helpful arguments. Cicely versus U.S. DEA is now submitted for decision and we are in adjournment for the day. Thank you. All rise. This court for this session stands adjourned.
judges: W. Fletcher, Watford, Collins